[Crim. No. 1205.   Second Appellate District, Division One.—November 28, 1925.]

THE PEOPLE, Respondent, v. B. M. ANDERSON et al., Appellants.

[1] CRIMINAL LAW—PLEADING—CHARGING DIFFERENT CRIMES.—Under section 954 of the Penal Code, an indictment, in two counts, may charge the defendants with the crimes of extortion and bribery, respectively, arising out of the same state of facts.

[2] ID.—ERRONEOUS CONVICTION OF TWO CRIMES — CONCURRENT SENTENCES.—Conceding that the defendants named in such indictment were found guilty of two crimes, arising out of the same state of facts, the judgment should not be reversed on that ground where the sentences imposed as the punishment for said crimes were made to run concurrently.

[3] ID. — ASSUMED AUTHORITY TO MAKE ARREST — ACCEPTANCE OF BRIBE TO RELEASE.—Where a city marshal of a municipality of the sixth class assumes to act under legal authority in making an arrest for an alleged violation of a penal statute of the state and in detaining the prisoners, and thereafter accepts a bribe upon the understanding and agreement that he will release the prisoners and not further prosecute the charges against them, he may be prosecuted for and convicted of bribery, and the legality of the

1.  See 14 Cal. Jur. 66; 14 R. C. L. 196.
2.  See 4 Cal. Jur. 490, and Supplement.

arrest, or his power to make the arrest, or to thereafter detain the persons arrested, is not a matter of controlling importance.

[4] Id. — Bribery by Private Citizen — Accomplice of Officer.— While a private citizen cannot as a principal be guilty of the crime of bribery as defined by section 68 of the Penal Code, he can be guilty of said crime in conjunction with one or more of the officers mentioned in said section of the code and as an accomplice of such officer.

[5] Id.—Release of Prisoners—Extortion—Evidence—Absence of Threat.—In this prosecution of a city marshal and an attorney at law under an indictment, in two counts, charging extortion and bribery, arising out of the arrest and imprisonment and the subsequent release of certain persons on a charge of violating a penal statute of the state, the evidence was insufficient to sustain the verdict finding defendants guilty of extortion—there being no evidence of any threat to any of the men arrested that they would be accused of any crimes unless they paid the money.

[6] Id.—Bribery — Evidence — Corroboration of Accomplices. — In this prosecution of a city marshal and an attorney at law under an indictment, in two counts, charging extortion and bribery, arising out of the arrest and imprisonment and the subsequent release of certain persons on a charge of violating a penal statute of the state, the evidence was sufficient to support the verdict finding defendants guilty of bribery; and conceding that both the arresting officer and the prisoner with whom the negotiations were had were accomplices, there was ample evidence to meet the requirements of the statute providing that testimony of an accomplice must be corroborated by other evidence tending to connect the defendants with the commission of the crime.

[7] Id.—Asking of Bribe—Payment of Money—Arrested Man not an Accomplice.—In such prosecution, where the testimony of the prisoner with whom the negotiations for the release of the arrested men were had shows that the defendant attorney asked a bribe of him to effect a disposition of the cases against the arrested men, the money thus secured to go to said attorney and others named by him, this was proof of the crime of bribery, whether any money was thereafter paid or accepted; and the prisoner with whom such negotiations were had was not an accomplice of said attorney in the commission of the crime of bribery by "the asking" of a bribe.

[8] Id.—Policeman as Executive Officer—Accomplices—Instructions.—In such prosecution, the giving of an instruction that a

4.　See 4 Cal. Jur. 511.

5.　See 12 Cal. Jur. 377.

7.　See 4 Cal. Jur. 511.

police officer was an executive officer, without the giving of any further instructions as to the duties of a police officer, was not error where no request for such further instructions was made by defendants; and the failure to instruct the jury fully as to whc of the witnesses testifying in the case were accomplices was not in the absence of any request for such an instruction by defendants.

[9] ID.—CONSCIOUSNESS OF GUILT—SUBSEQUENT ACTS OF ONE OF THE DEFENDANTS—EVIDENCE—INSTRUCTIONS.—In such prosecution, in view of the evidence introduced showing the acts and conduct of the arresting officer and the defendant city marshal after the alleged commission of the crimes of extortion and bribery, and the repeated and emphatic admonition by the court during the trial and while the evidence was being introduced that such evidence could not be considered by the jury as against the defendant attorney, but was competent as tending to show a consciousness of guilt on the part of the defendant city marshal, it was not reversible error to instruct the jury that "such evidence was received solely as tending to show guilty knowledge or consciousness of guilt on the part of the defendant" city marshal, and that the jury could not "consider any part of such evidence in determining the guilt or innocence of the defendant" attorney.

[10] ID.—MISCONDUCT OF COURT—WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES—INSTRUCTIONS.—In such prosecution, it was not probable that the jury were improperly influenced by any of the remarks or statements inadvertently made by the trial judge without any intention to influence or bias the jury, where when his attention was called to the objectionable statements the trial judge either modified the language or withdrew it altogether and admonished the jury to disregard the same, and in addition the court instructed the jury that the latter was the sole and exclusive judge of the weight of evidence and the credibility of witnesses and that if any expression of the court had seemed to indicate an opinion relating to such matters such expression must be entirely disregarded by the jury.

[11] ID.—SEPARATE TRIALS—DISCRETION—APPEAL.—The granting of a motion for a separate trial made by one defendant jointly charged with others rests in the discretion of the trial judge, and an order denying such a motion should not be set aside unless it clearly appears that the trial court abused such discretion; and in this prosecution under an indictment charging an attorney, a city marshal, and a police officer with the crimes of extortion and bribery, the trial court did not abuse its discretion in denying the motion of said attorney for a separate trial.

---

11.  See 8 Cal. Jur. 194; 8 R. C. L. 167.

[12] ID.—DUTY OF COUNSEL TO CLIENT—IMPROPER REMARKS BY TRIAL JUDGE—JUSTIFIABLE TRANSGRESSIONS.—In this prosecution under an indictment charging an attorney, a city marshal, and a police officer with the crimes of extortion and bribery, in view of the length of the trial and the facts that it was bitterly contested by all the parties interested therein and that not only was there considerable feeling manifested between the prosecution and the defendants, but the relations between the latter were not of the most friendly character, it was not unusual that the trial judge, on account of the great stress under which he was laboring, transgressed the strict rules that circumscribe his actions and went beyond what he himself considered the proper limits of correct conduct, for which he made an open and frank apology in the presence of the jury and of all others in attendance on the court, and it could not be said that the remarks of the court tended to show any discourtesy or disrespect on the part of the court toward counsel for defendant attorney, or prejudiced said counsel in the minds of the jury so that he was unable to properly present his client's defense, but the demeanor of the judge evinced a sincere desire and clear intent to accord to said counsel all the rights and privileges due him as an officer of the court in the discharge of his duty toward his client.

[13] ID.—MOTION IN ARREST OF JUDGMENT—APPEAL—DISMISSAL.—An order denying a motion for arrest of judgment is not appealable, and an attempted appeal from such an order will be dismissed.

---

(1) 31 C. J., p. 780, n. 40. (2) 17 C. J., p. 356, n. 14. (3) 9 C. J., p. 405, n. 38. (4) 9 C. J., p. 409, n. 82 New; 16 C. J., p. 121, n. 6. (5) 25 C. J., p. 242, n. 73. (6) 16 C. J., p. 712, n. 30. (7) 9 C. J., p. 409, n. 81, 82; 16 C. J., p. 679, n. 94. (8) 16 C. J., p. 1058, n. 37, p. 1059, n. 42. (9) 16 C. J., p. 555, n. 18, 27; 17 C. J., p. 341, n. 83, p. 342, n. 91, p. 359, n. 64, p. 361, n. 74. (10) 17 C. J., p. 295, n. 63. (11) 16 C. J., p. 785, n. 68, p. 787, n. 93, p. 852, n. 93; 17 C. J., p. 231, n. 63. (12) 16 C. J., p. 829, n. 34; 17 C. J., p. 295, n. 63, 64. (13) 9 C. J., p. 414, n. 59; 17 C. J., p. 34, n. 49, p. 196, n. 31.

APPEAL from a judgment of the Superior Court of Los Angeles County and from orders denying new trials. Frank C. Collier, Judge. Reversed in part; affirmed in part. Appeals from orders denying motions for arrest of judgment dismissed.

The facts are stated in the opinion of the court.

---

13.  See 8 Cal. Jur. 493.

Stephen Monteleone, Anderson & Anderson, John L. Richardson and Kimball Fletcher for Appellants.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

CURTIS, J.—The appellants and one Stanley B. Abbott were accused of extortion and bribery. The indictment against them consisted of two counts—the first for extortion and the other for bribery. After the impaneling of the jury and before the introduction of any testimony, the court, upon the motion of the district attorney, dismissed the action as to Abbott, and he thereafter testified on behalf of the prosecution. The appellant Anderson was the city marshal of the city of Torrance. He is frequently referred to in the testimony as the chief of police of said city and at other times as "the chief." Abbott was a policeman of said city, and appellant Morewood was an attorney at law, with his office at the city of Redondo Beach, only a short distance from the city of Torrance. On Saturday evening, at about 6 o'clock, July 24, 1924, Abbott caused the arrest of an automobile party consisting of five men who were motoring through the city of Torrance. These men were J. A. Draffon, E. L. Foster, A. A. Higgins, F. Mangold and B. F. Frymier. Immediately upon their arrest they were taken to the police station, where charges were made against Draffon of reckless driving and driving a motor vehicle while intoxicated and resisting a public officer. The other four men were charged with attempting to prevent a public officer from performing his duty and with drunkenness. From the police station they were taken to and confined in the city jail. The charges of resisting a public officer and of attempting to prevent a public officer from performing his duty preferred against these men grew out of an alleged assault by Draffon upon Abbott in which it was claimed he was assisted by the other four men, after Abbott had caused them to be "tagged" for reckless driving. On the following day, Sunday, and while these five men were still in jail, it was suggested to Abbott by Mr. S., a resident of Torrance, who had a casual acquaintance with the arrested men, that as the men who were under arrest were business men of a neighbor-

75 Cal. App.—24

ing community, they might be willing to pay a reasonable sum of money, either as a fine or otherwise, to secure their release from said charges. The testimony tends to show that Abbott immediately on this suggestion being made to him went to appellant Anderson and informed him of the suggestion made to him by Mr. S., and he suggested to Anderson that the latter see Draffon regarding the matter, but Anderson replied that they would have to have an attorney to handle it for them and suggested that they go to Redondo Beach. On their way to Redondo Beach they discussed the amount of money that the arrested men might be able to raise. Upon arriving at Redondo they endeavored to locate Morewood, but, failing to do so, left word for Morewood to call and see Anderson at Torrance. The next morning Morewood arrived at the police station at Torrance some time before 10 o'clock. He asked for Anderson and was directed to the latter's home. In a few minutes thereafter Anderson telephoned the police sergeant and directed him to permit Morewood to see the men in jail. Following the receipt of this telephone message, Morewood returned to the police station and met Frymier, one of the men arrested, who had in the meantime been released on bail. Morewood stated to Frymier that it would be cheaper for the men under arrest to pay a reasonable amount of money than to fight the cases against them, and proposed that for $950 all of the cases could be settled, $150 of this amount to go in payment of a fine to be assessed against Draffon and the balance of $800 to go to himself, Anderson, Abbott, and others. This proposition was agreed to by Frymier, and it was suggested by Morewood that the cases be continued until 5 o'clock of that evening in order to give the men time in which to raise the money. Accordingly, the cases were continued as agreed. Thereafter Frymier and the other men under arrest raised the sum of $850, which was delivered to Frymier, and a short time before the hour set for the final hearing of the cases, Frymier paid Morewood $750, upon the understanding and agreement that all the cases would be dismissed except the one against Draffon for reckless driving, and that this would be settled by paying a fine not exceeding $150. A few minutes thereafter the cases were again called in court and were all dismissed except

the one against Draffon. In this case Draffon pleaded guilty to reckless driving and was fined $100, which was paid by Frymier. The money was subsequently divided between appellants and Abbott.

Judgment was rendered against appellants in accordance with the verdict of the jury finding each of them guilty of extortion and bribery. The sentence, however, of each appellant, for the crime of extortion was, by said judgment, made to run concurrently with the sentence imposed for the crime of bribery. The appeal is from said judgment and also from the order of the court denying appellants' motions for a new trial, and for arrest of judgment.

[1]  It is first contended by appellants that they are charged with and found guilty of two alleged crimes purporting to arise out of the same state of facts, the commission of one of which precludes and refutes any possibility of the commission of the other. Appellants insist that "Section 954 of the Penal Code precludes the idea of any intent to either indict or try a person jointly for two offenses, where as to one or the other the jury would be in duty bound to acquit." The question as to the legality of an indictment charging two such offenses has been definitely settled in this state adversely to appellants' contention. (*People* v. *Piner*, 11 Cal. App. 542, 546 [105 Pac. 780] ; *People* v. *Shwartz*, 43 Cal. App. 696 [185 Pac. 686] ; *People* v. *Evanoff*, 45 Cal. App. 108 [187 Pac. 54].)

[2]  Conceding that appellants have been found guilty of two crimes, arising out of the same state of facts, we question whether the judgment should be reversed on this ground, in view of the fact that the sentences imposed as the punishment for said crimes were made to run concurrently. Extortion is punishable by imprisonment in the state's prison not exceeding five years, and bribery by imprisonment for not less than one nor more than ten years. The maximum punishment, therefore, which appellants might suffer under this judgment cannot exceed ten years. Had they been found guilty of bribery alone, the term of imprisonment could not have been less than that fixed by the court as punishment for the two crimes. In the case of *People* v. *Sharp*, 58 Cal. App. 637 [209 Pac. 226], the appellant therein had been found guilty of burglary and robbery, and the claim was made that he had been con-

victed of two crimes arising out of the same state of facts, and the same contention was made in that case as is now made here. The court, however, page 639, disposed of the question as follows: "If it be conceded, for the sake of argument only, that the acts described were so connected together as to amount to but one offense, it may not be said that the judgment was prejudicially erroneous. If the conviction should have been for one offense alone, that conviction might properly have been for the crime of robbery. Under the law a person convicted of robbery may be sentenced to imprisonment for life. The form of judgment as now authorized to be pronounced under the 'indeterminate sentence law' (it was sufficiently expressed by the judgment herein) is in legal contemplation a judgment for the maximum period authorized by the statute; hence here, had the conviction been for the crime of robbery alone, the sentence imposed would not have been for a less time than that which was fixed."

[3] It is next contended that count two of the indictment fails to state a public offense against the appellants. This contention is based upon the definition of bribery as given in section 68 of the Penal Code. By the terms of this section it is provided substantially that every executive officer who asks or receives a bribe upon an agreement that his action upon a matter then pending, or which may be brought before him in his official capacity, shall be influenced thereby, is guilty of bribery. Count two of the indictment charges that appellants and Abbott asked and received a bribe upon an agreement that they would refrain from prosecuting and detaining Draffon and his codefendants for the criminal offense of resisting a public officer in the discharge of his duties. It is claimed in this connection by appellant Anderson that the charge against Draffon, and others, was a violation of the provisions of section 148 of the Penal Code; that appellant Anderson, as city marshal of the city of Torrance, a municipal corporation of the sixth class, is only charged by law with the prosecution of breaches and violations of the city ordinances of said city, and that it is not his official duty to enforce the penal statutes of this state, or to prosecute persons accused of violating such statutes. This argument of appellants appears to be satisfactorily answered by the

case of *People* v. *Lips,* 59 Cal. App. 381 [211 Pac. 22].
Lips and one Anderson were deputy sheriffs of the county
of Los Angeles and as such officers they arrested J. F.
Furay, against whom there was then pending in the state
of Texas an indictment.  After the arrest of Furay, Lips
and Anderson accepted a bribe from him, and in consid-
eration thereof permitted him to escape.  It was claimed
by Lips that there was no legal duty resting upon him to
take Furay into custody, and that "in the absence of a
legal duty there could be no bribery."  The court held
that notwithstanding there might have been no legal duty
resting upon the officers to arrest Furay, yet, having made
the arrest and accepted a bribe to release him, they were
guilty of bribery.  The court (p. 390) quoted with ap-
proval from the case of *Mosley* v. *State,* 25 Tex. App. 515
[8 S. W. 652].  In this latter case the Texas court of ap-
peals said: "It is insisted by counsel for defendant that
the arrest and custody of John Gable by the defendant was
without authority of law, and that, therefore, it was no
offense for the defendant to accept a bribe to release him.
We do not so understand the law.  It was by virtue of his
official authority that the defendant arrested and held
John Gable.  It matters not whether the arrest and cus-
tody were legal or illegal; the said Gable was a prisoner
in the custody of the defendant, a peace officer, and was
permitted by the defendant to escape, in consideration of
money paid him to effect such escape.  We are of the opin-
ion that, in a prosecution for this offense, it is not per-
missible for the defendant to question the legality of his
custody of the prisoner.  Such an issue is irrelevant and im-
material.  The moral obliquity of this offense is the same
where the custody of the prisoner is illegal as where it is
legal, and the injury to public justice is the same."

The language of this case is peculiarly applicable to the
one before us.  The indictment herein charged the arrest
of the five men, and the acceptance of a bribe by the offi-
cers, upon the agreement of the latter not to detain the
men arrested.  The legality of the arrest, or the power of
the officers to make the arrest, or to thereafter detain the
men arrested, is not a matter of controlling importance in
cases of this character.  It is sufficient if the officers as-
sumed to act under legal authority in arresting and de-

taining their prisoners, and thereafter accepted a bribe upon the understanding and agreement that they would release them and not further prosecute the charges against them.

[4]  Appellant Morewood contends that as section 68 of the Penal Code only refers to certain officers as being amenable to its provisions, and that as it is neither alleged nor proven that he was an officer of the class mentioned in said section of the code, nor any officer whatever, he could not be found guilty of bribery as charged in the indictment. Therefore the judgment against him cannot stand. It is true that as a private citizen he could not as a principal be guilty of the crime of bribery as defined by the above code section. But in conjunction with one or more of the officers mentioned in said section of the code and as an accomplice of such officer, he could be guilty of the crime as defined by said section 68. (Pen. Code, secs. 31 and 971; *People* v. *Bartol,* 24 Cal. App. 659 [142 Pac. 510]; *People* v. *Horn,* 25 Cal. App. 583 [144 Pac. 641]; *People* v. *State,* 118 Ga. 799 [45 S. E. 614].)

[5]  It is further contended by appellants that the evidence is not sufficient to justify either the verdict of extortion or bribery. As to the verdict finding appellants guilty of extortion, we think appellants' contention must be sustained. The witness Frymier, from whom it is claimed the money was extorted and upon whose testimony the prosecution must rely in support of this charge, testified that Morewood came to him with a proposition or offer that upon payment of a certain sum of money, the charges against all of the five men would be dismissed, with the exception of that against Draffon, and that that could be settled by a payment of a fine. He made no threat to Frymier or to any of the accused men that they would be accused of any crime unless they paid the money. In fact, the evidence shows that they had already been accused of the various crimes enumerated above, and that Morewood's proposition to them was that these charges would be dismissed as against all of them except Draffon. Extortion is defined by section 518 of the Penal Code as the obtaining of property of another with his consent induced by a wrongful use of force or fear. By section 519 of the same code it is provided that, ''Fear, such as will constitute ex-

tortion, may be induced by a threat, either: . . . 2. To accuse him (the individual threatened), or any relative of his, or member of his family, of any crime.'' Count one of the indictment sought to charge the crime of extortion as defined by these two sections of the Penal Code. The crime as therein defined is undoubtedly properly and legally charged, but the evidence fails to sustain the charge. We therefore are of the opinion that the judgment in so far as it is based upon the verdict of the jury, finding the appellants guilty of the crime of extortion, is erroneous.

[6] As to the verdict finding appellants guilty of bribery, the evidence, in our opinion, is sufficient to support it. Even conceding that both Abbott and Frymier were accomplices, there is ample evidence to be found in the record to meet the requirements of the statute providing that testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the commission of the offense before a conviction can be had. [7] There may be some question, however, whether Frymier was an accomplice. The appellants were indicted under section 68 of the Penal Code. By its terms ''the asking'' as well as ''the receiving'' of a bribe is made a crime. The evidence shows that Morewood approached Frymier and proposed that in consideration of the payment of a certain amount of money to him, the cases against the arrested men would all be disposed of with the payment of a nominal fine. There is no question, according to the testimony of Frymier, that Morewood asked a bribe of him, the money thus secured to go to the appellants and others mentioned by Morewood. This was proof of the crime of bribery, whether any money was thereafter either paid or accepted. The witness Frymier was not an accomplice of Morewood in the commission of the crime of bribery by asking of a bribe. (*People* v. *Powell,* 50 Cal. App. 436, 443 [195 Pac. 456].)

Numerous objections are made as to the validity of the rulings of the trial court in giving and refusing instructions. One of the instructions, the giving of which appellant strenuously insists is prejudicial error, followed the identical language of an instruction given and approved in the case of *People* v. *Wolff,* 182 Cal. 728, 739 [190 Pac. 22]. The giving of this same instruction was later ap-

proved in *People* v. *Raney,* 70 Cal. App. 92 [232 Pac. 724], and by this court in the late case of *People* v. *Swaar,* 74 Cal. App. 135 [239 Pac. 412].

[8]   The court instructed the jury that a police officer was an executive officer.   While appellants do not appear to question the correctness of this instruction, they complain that the giving of such an instruction was error unless the court further instructed the jury as to the duties of a police officer.   No request for such further instruction was made by appellants, and in the absence of such request they cannot now complain.   And for the same reason the failure of the court to instruct the jury fully as to who of the witnesses testifying in the case were accomplices was not error in the absence of any request for such an instruction by appellants.

[9]   The court also gave the following instruction: "Certain evidence has been received of the acts and declarations of the defendants, B. M. Anderson and Stanley Abbott, done and made by them after the alleged commission of the crimes of extortion and bribery.   Such evidence was received solely as tending to show guilty knowledge or consciousness of guilt on the part of the defendant, B. M. Anderson; and you cannot consider any part of such evidence in determining the guilt or innocence of the defendant, A. P. Morewood."

It is contended by appellant Anderson that the above instruction does not contain a correct statement of the law upon the subject embraced therein.   Appellant Anderson claims in substance that the court instructed the jury that they might consider certain acts and declarations of the conspirator Stanley Abbott made after the termination of the conspiracy as tending to show guilty knowledge or consciousness of guilt on the part of another of said conspirators, namely, B. M. Anderson.   Such a construction might reasonably be drawn if we consider this instruction by itself and without reference to the proceedings shown in the record.   A large amount of testimony was admitted relating to certain transactions occurring between Abbott and Anderson and after the termination of the conspiracy.   These transactions had reference in the main to Abbott, at the request of Anderson, going to the office of the attorney of the latter and there making an affidavit contradicting a previous

affidavit made by Abbott, and also to Abbott, at the request and with the assistance of Anderson, leaving the state and remaining absent therefrom for a period of a month or more in order to avoid testifying before the grand jury while said body was investigating this charge of bribery. Just prior to the admission of this testimony, and at numerous times during its recital, the question arose as to its relevancy and competency. Upon each and all of these occasions the court admonished the jury that such evidence could not be considered by them as against the appellant Morewood, but was competent as tending to show a consciousness of guilt on the part of appellant Anderson. We have no doubt it was to this testimony that the court referred in the above instruction, and we think that this must have been apparent to the jury from the frequent and emphatic admonitions of the court during the trial and while this evidence was being introduced. No injury, therefore, was sustained by appellant Anderson, and the giving of said instruction was not reversible error.

In our opinion the other instructions given by the court are substantially correct, although the language in some of them is not entirely clear, yet we do not believe that the jury were misled by any of them. Neither did the court err, in our opinion, in refusing any of the instructions offered on behalf of appellants. Neither do we find any error to the prejudice of appellants in any of the rulings of the court in the admission or rejection of evidence.

[10] Appellants have set forth in their brief a number of statements made by the trial judge during the progress of the trial, and it is contended by them that, in these statements, the trial judge commented upon the weight and sufficiency of the evidence to the serious prejudice of appellants' right. It is apparent to us that these remarks and statements of the court to which appellants have taken exception were inadvertently made and without any intention on the part of the court to influence or bias the jury. In most every instance when the court's attention was called to the objectionable statements, the trial judge either modified its language or withdrew it altogether and admonished the jury to disregard the same. In addition to this the court instructed the jury as follows: ''You are the sole and exclusive judges of the weight of evidence and

the credibility of witnesses, and it is your function to determine all questions of fact arising from the evidence in the case. With the facts the court has nothing to do. I have not expressed, nor intend to express, nor have I intimated or intend to· intimate any opinion as to what witnesses are, or are not, worthy of credence; what facts are, or are not, established; or what inferences are to be drawn from the evidence adduced. If any expression of mine has seemed to indicate an opinion relating to any of these matters such expression must be entirely disregarded by you.'' Under these circumstances, we hardly think it probable that the jury were improperly influenced by any of the remarks or statements of the trial judge.

[11] The court did not err in denying appellant Morewood's motion for a separate trial. The affidavit filed in support of said motion sets forth in the main two grounds or reasons why Morewood could not have a fair trial if tried at the same time with Anderson and Abbott. The first of said grounds was that if tried with Anderson there would be damaging testimony admitted against Anderson which would be incompetent as to Morewood, but which would inflame the passions of the jury against Morewood and Anderson. This evidence as set out in the affidavit was substantially that Anderson had attempted to suppress certain evidence, and that he had used obscene and profane language toward Draffon and the other men arrested while they were in jail. This evidence could not be considered by the jury in determining Morewood's connection with the alleged crime. It in no way connected Morewood with the charge against him nor did it relate to him in any manner. We fail to understand, therefore, how it could have prejudiced the jury against him. The second ground relied upon by Morewood on his motion for a separate trial was that he was informed that Abbott had made a sworn statement in which he admitted that he had accepted a bribe as charged in the indictment, and that if he were tried with Abbott this written statement would be admissible as against Abbott, and its admission would improperly prejudice the jurors against Morewood. As we have already seen, the case was dismissed as against Abbott before the admission of any testimony. Furthermore, 'while this written statement was admitted in con-

nection with Abbott's testimony, the court instructed the jury that, having been made after the termination of the conspiracy, it could not be considered by the jury as against the appellant Morewood. The legal presumption is that the jury followed this instruction and disregarded said statement in arriving at its verdict against Morewood. The granting of a motion for a separate trial made by one defendant jointly charged with others rests in the discretion of the trial judge (Pen. Code, sec. 1098), and an order denying such a motion should not be set aside unless it clearly appears that the court abused such discretion. We are of the opinion that the trial court did not abuse this discretion in denying appellant Morewood's motion for a separate trial.

[12] The final contention made by appellant Morewood is that the trial judge erred in making statements in the presence of the jury prejudicial to him. The burden of appellant Morewood's complaint in this respect is that the trial court was so discourteous and disrespectful to his attorney that the latter was prevented from adequately and properly presenting his client's defense. The record shows that the case was on trial for something over two weeks, and that the trial was bitterly contested by all the parties interested therein. Not only was there considerable feeling manifested between the prosecution and the appellants, but the relations between the two appellants were not of the most friendly character. Numerous rulings of the court upon questions arising as to the admission and rejection of testimony were adverse to the contention of appellant Morewood. Frequent colloquies were had between the trial judge and the attorney for said appellant. In some of these verbal engagements more or less feeling was displayed on the part of each party thereto. It is not unusual in trials of this character for the trial judge, on account of the great stress under which he is laboring, to transgress the strict rules that circumscribe his actions. Evidently in this case the trial judge on at least one occasion went beyond what he himself considered the proper limits of correct conduct. In due time, realizing his error, he made an open and frank apology to counsel in the presence of the jury and of all others in attendance on the court. He manifested some impatience

toward counsel as to the amount of time the latter was consuming in the presentation of his case. But we find no instance in which he invaded any of appellant's rights by insisting that the trial proceed with greater rapidity. Our attention has not been called to any single instance in which the court committed any grave error, either in any remark to, or in the treatment of, said counsel. But appellant Morewood claims that taking all of the remarks made by the court to counsel and the treatment of counsel by the court as a whole, it so prejudiced counsel in the minds of the jury that he was unable to properly present his client's defense. We do not think this conclusion can be drawn from the facts disclosed by the record. While the trial court on numerous occasions ruled against the contentions of said counsel, and upon others admonished counsel to expedite the trial, and on still others expressed its inability to agree with the position assumed by counsel on different questions arising during the trial, yet we find nothing in any of these acts of the court which tended to show any discourtesy or disrespect on the part of the court toward counsel. It appears to us after a close study of the record that it was not the desire or intention of the court to deprive said appellant of any of his legal rights or to place his counsel in any unfavorable light before the jury. We have already referred to the occasion when the court, feeling that it had done an injustice to said counsel, apologized to him in open court. On another occasion, at the close of a court session, during which some words had passed between the trial judge and said counsel, the court voluntarily said, "Ladies and gentlemen of the jury —I just have one matter that I want to say to you in regard to some of the exceptions taken by Mr. Fletcher to the remarks of the court. I don't want it to be understood in any manner or degree that I am charging Mr. Fletcher with any unfairness whatsoever. I may disagree with him as to the materiality as to some of the things that he is doing, but under no circumstances are you to infer that I am charging Mr. Fletcher with unfairness or to desire to do anything other than what he believes to be proper under his duty to his client." At its conclusion counsel thanked the court for making this statement. There were other occasions when the court showed its com-

plete willingness to correct any error that it might have made in its rulings or in its remarks and to remove any erroneous impression that the jury might have gained by any words spoken or acts done by it. The demeanor of the trial judge toward the counsel in question, taken as a whole, while it may not be entirely free from criticism, we think evinces a sincere desire and clear intent on the part of the court to accord to counsel all the rights and privileges due him as an officer of the court in the discharge of his duty toward his client. We are satisfied that the record does not disclose that any injury was sustained by appellant Morewood on account of the treatment accorded to his counsel by the trial judge.

[13] The appeals from the order denying appellants' motions for arrest of judgment are dismissed, as said order is not appealable.

We have heretofore stated that in our opinion the evidence is not sufficient to support the verdict finding appellants guilty of extortion. As to the charge of bribery, not only is the evidence sufficient to support the verdict, but there appears to be no error in the record that would justify a reversal of the judgment based upon said verdict finding appellants guilty of the crime of bribery. Therefore, the judgment, in so far as it relates to the crime of extortion, is reversed, but in all other respects it is affirmed. The order denying the respective motions of appellants for a new trial upon the charge of extortion is reversed, but said order denying said motions for a new trial upon the crime of bribery is affirmed.

Conrey, P. J., and Hahn, J., *pro tem.,* concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 25, 1926.

Curtis, J., being disqualified, did not participate.